UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION – DETROIT

In re:

Elizabeth J. Horn,   Case No.: 13-62505-wsd
                     Chapter 7
   Debtor.           Hon. Walter Shapero
_____/

**OPINION DENYING TRUSTEE'S OBJECTION TO DEBTOR'S CLAIM OF EXEMPTION**

Introduction

The Debtor claimed an exemption in residential real property on the basis of 11 U.S.C. § 522(d)(1), despite the fact that she admittedly was not actually using it as a residence as of the filing date. She does claim, however, she maintained "constructive occupancy" as of the filing date, and is thus entitled to claim it as exempt. The Chapter 7 Trustee's objection to that claim of exemption is denied.

Facts

The Debtor Elizabeth Horn filed this Chapter 7 bankruptcy on December 17, 2013. As of the filing date, she owned real property located at 15659 DuPage in Taylor, Michigan, which is a two bedroom condominium that she valued at $27,000 ("DuPage Property"). Her original schedules claimed an exemption for that property in the amount of $9,975 under 11 U.S.C. § 522(d)(5). She later amended her exemption to claim $945 under § 522(d)(5), as well as $22,975 under § 522(d)(1), which pertains to "real property… that the debtor… uses as a residence." The Chapter 7 Trustee objected to the Debtor's amended claim of exemption under § 522(d)(1) on

1

the basis that the Debtor was not using the DuPage Property as a residence on the filing date. The Debtor concedes that she did not physically occupy or live in the DuPage Property on the filing date, but contends that she maintained "constructive occupancy," arguing she had temporarily vacated or had been temporarily displaced because of financial hardship, but always intended to return if and when she resumed receiving income. The Court held an evidentiary hearing on the matter.

Prior to 2006, the Debtor had been continuously living with her mother, who owned the DuPage Property, for some 16 or 17 years. They lived there together until the Debtor's mother died in 2006, leaving the property free and clear, as well as its contents, to the Debtor. Debtor continued to live there and, at the time, was employed part-time, earning approximately $10 per hour (totaling some $800-900 per month, presumably after any taxes). In 2009, the Debtor was dismissed from her job for engaging in what she called "coupon fraud." At that time, she had no other sources of income.

Because of her lack of income, the Debtor then moved out of the DuPage Property and moved in with her sister in nearby Allen Park, Michigan, taking some, but not all, of the furniture that had been located at the DuPage Property. Most of the Debtor's living expenses were paid by her sister. The Debtor's only personally borne expense was her car insurance. Sometime in 2009, the Debtor leased the DuPage Property to her niece ("Niece"), who lived there with her husband and two children. The Niece is the daughter of the Debtor's sister with whom the Debtor was living. The lease agreement between the Debtor and the Niece was oral, on a month-to-month-basis, and at a rate of $600 per month.

Around the same time, the Debtor applied for Social Security Disability benefits, relating to asthma and other physical incapacities for which she had been most recently diagnosed in late 2009 or early 2010, though she testified that she was symptomatic before then. While there is some lack of clarity as to how many times she applied for Social Security Disability or how many times she was denied, the Court finds that the record sufficiently establishes that the Debtor was in the process of applying for Social Security Disability around late 2009 or early 2010, around the time she vacated the DuPage Property, and that she continued to pursue that original application, or corresponding appeals, or subsequent re-applications, until she was ultimately approved for benefits pursuant to an administrative decision dated February 28, 2014. She was represented by an attorney (at least during a portion of these Social Security Disability proceedings).

At the Court's request, the Debtor supplied the most recent Social Security Disability decision dated February 28, 2014, for which the Debtor was approved for benefits. That decision does not review or specifically recount the history of the Debtor's applications for Social Security Disability benefits, if any, prior to the application that was then before the agency. It refers to an "amended" onset disability date of July 18, 2012 for the purpose of awarding benefits (but without specifying the prior date or dates). The decision, among other things makes a finding of severe impairments of chronic obstructive pulmonary disease, asthma, diabetes mellitus, neuropathy, and hypertension, citing "a well-supported history" of such, as well as a conclusion that Debtor's statements were "credible and well-supported by the extensive and frequent nature of the necessary treatment." The decision also notes that Debtor was an individual "closely approaching advanced age on the established disability onset date" and "has a

3

13-62505-wsd    Doc 50    Filed 08/12/14    Entered 08/12/14 17:04:47    Page 3 of 11

limited education." The record in this case permits a conclusion, to the extent relevant to the outcome, that the conditions leading to the disability award commenced well before the indicated July 18, 2012 date and, at least to some degree, may have been in existence at the time Debtor lost her job and moved out of the DuPage Property, and were a factor in her inability to obtain employment that might have provided her the financial means to physically occupy the DuPage Property.

The Debtor testified that she moved out of the DuPage Property because she lacked the income to pay property taxes (some $1,400 to $1,500 per year), condominium association fees (some $215 per month), and property insurance, but that if and when she could later afford to move back into the DuPage Property, she would do so. The testimony of the Debtor and the Niece confirms this understanding. The property taxes on the DuPage Property were apparently paid by the Debtor's sister. Substantial repairs to the property were needed at some point due to water damage, including replacing the water heater, trim, and carpet, and were not paid for by the Debtor, but were costs shared between the Niece and the Debtor's sister. It appears that no person maintained insurance on the DuPage Property (although the Niece was apparently under the impression that the Debtor did). The Niece used the DuPage Property as the address of record on her driver's license.

Between the January 23, 2014 date of the Debtor's Social Security Disability hearing (incident to her most recent application) and the February 28, 2014 date of her approval for benefits, two events took place in this bankruptcy case. First, the Debtor's Meeting of Creditors was held on February 13, 2014, at which the Debtor and her attorney indicated that she would be amending her exemption for the DuPage Property and that the Debtor would be moving back

4

into the DuPage Property when she could attain income. Second, on February 19, 2014, the Debtor amended her exemption to also claim the § 522(d)(1) residence exemption for the DuPage Property. The testimony indicated that the Debtor started receiving Social Security Disability Income sometime in April 2014 in the approximate amount of $1,400 per month. According to the Debtor's response to the Trustee's Objection to the Claim of Exemption, the Debtor informed her Niece that she had until the end of March 2014 to vacate the DuPage Property. That deadline was not complied with (for unspecified reasons), and the Niece and her family continued to live at the property at least through the May 28, 2014 date of the evidentiary hearing. On or around May 20, 2014, the Debtor had moved back into the DuPage Property and was living there, together with her Niece and the Niece's family. The Niece explained the overlapping occupancy as necessary to allow the Debtor to "get situated."

Discussion

The Trustee bears the burden of proof by a preponderance. In re Stanley, 494 B.R. 287, 289 (Bankr. E.D. Mich. 2013). An exemption should be liberally construed in favor of the Debtor and in light of the purpose for which it was created. Id. However, because a debtor's claim of "constructive occupancy" is essentially an affirmative defense to a prima facie case of abandonment, it is the Debtor who bears the burden of proof on that matter. In re Lusiak, 247 B.R. 699, 703 (Bankr. N.D. Ohio 2000).

The Trustee's position can be summarized as follows. First, the Debtor offered contradictory testimony that undercuts her credibility. Second, the Debtor only amended her schedules to assert her "constructive occupancy" argument when it became apparent to her that the Trustee sought to pursue administering the DuPage Property, including by seeking the Niece's contact

information. Third, and as a matter of law, the constructive occupancy doctrine is limited in scope and is generally confined to situations where a debtor is out of the residence *temporarily* due to unavoidable or extenuating circumstances. But here, the Debtor left the property as a result of her own voluntary acts, remained absent indefinitely, and was absent for over five years. She only had some vague "hope" to return at some point, if possible, and at the time of the filing, her obtaining the income necessary to enable her to bear the expenses associated with maintaining the DuPage Property had not been achieved.

Debtor argues that during the time the Debtor was not actually living in the DuPage Property, she was applying for Social Security Disability and was working to keep that property, if she would be able to do so, and intended to live there for the rest of her life. Social Security Disability disputes can (and in this case did) take a substantial amount of time to resolve, so her five year absence can in a sense be considered temporary in that it had a temporal aspect to it, based on a successful outcome of pending legal proceedings. The Debtor's Niece was aware that, at any time, the Debtor could ask her to leave the property. Immediately upon being approved for Social Security Disability, the Debtor told the Niece to vacate the DuPage Property.

There was some mention and/or argument that part of the reason the Debtor vacated the DuPage Property was because she feared for her safety. The factual record does not sufficiently substantiate that claim. That argument also conflicts with (a) the apparent fact that the Debtor remains independent and testified that she can still drive a car; and (b) the Debtor's primary argument that she wishes to live in the DuPage Property (presumably alone, because she is asking that her Niece vacate it). There was also some mention and/or argument by the Debtor that part of the reason why she vacated the DuPage Property was because of her disability or the

6

symptoms thereof. The Court finds that the totality of the record establishes that the Debtor's predominant reason for vacating the DuPage Property was her lack of financial means to maintain it.

It is well established that an exemption for a residence under § 522(d)(1) is fixed as of the filing date. In re Demeter, 478 B.R. 281, 286 (Bankr. E.D. Mich. 2012). Section "522(d)(1) requires a use of real property not just mere ownership or maintenance in order to claim it as exempt." In re Feliciano, 487 B.R. 47, 51 (Bankr. D. Mass. 2013). The "constructive occupancy" doctrine has been described as follows:

> For purposes of § 522(d)(1), constructive occupancy can be defined as physical absence from a premises coupled with an intent to return to the premises at some point in the future. In order to establish these criteria, bare allegations by the debtor of an intent to return to his property are insufficient. Instead, for a debtor to establish the requisite intent to return to his property, the debtor's own testimony must be coupled with external circumstances which would demonstrate that it would be realistic to expect that the debtor will actually return to the property. For example, a debtor's involuntary or compelled absence from his property, in conjuncture with credible testimony by the debtor of an intent to return, while not conclusive, would be very probative of a debtor's actual intent to return to his property.

In re Lusiak, 247 B.R. at 703 (internal citation omitted). There must be "some positive indication of an intent to occupy the premises; an undefined floating intention is inadequate." In re Lozada Rivera, 470 B.R. 109, 117 (Bankr. D.P.R. 2012) (quoting Alan N. Resnick & Henry J. Sommer, 4 Collier on Bankruptcy ¶ 522.09[1] (16th ed. 2011)).

There are several illustrative examples of cases dealing with "constructive occupancy," either in the context of § 522(d)(1) or comparable state exemptions. In re Cameron, 25 B.R. 119 (Bankr. N.D. Ohio 1982) (state exemption allowed where the debtors were not living in home on the filing date because fire damage made it uninhabitable, the debtors planned to return when

7

repairs were completed, and in fact did return); In re Anderson, 240 B.R. 254 (Bankr. W.D. Tex. 1999) (constructive occupancy applied where debtor was in the Army and lived in the subject property until she was involuntarily relocated by the Army, causing her to rent it to a third party while maintaining an intent to return); In re Brent, 68 B.R. 893 (Bankr. D. Vt. 1987) (§ 522(d)(1) exemption allowed where the debtor was absent from home on the filing date because he (a) had an employment obligation in another city and (b) was under the mistaken belief that a court order prohibited him from returning, but he sincerely intended to return); In re DeMasi, 227 B.R. 586 (D.R.I. 1998) (Debtor owned a remainder interest in the property, subject to the life estate of his elderly aunt, and he intended to move in as soon as he was able. Debtor had tried to move in previously, but the aunt refused. Court allowed § 522(d)(1) exemption, holding that he "has a meaningful ability to occupy this home within a reasonable time" and "intends to occupy the property as soon as the law allows.").

The Trustee has met his initial burden of proving a prima facie case that the Debtor did not use the DuPage Property as a residence as of the filing date. For the following reasons, the Court also finds that the Debtor has met her burden of proving "constructive occupancy" by a preponderance of the evidence. The Court believes, as is established by the referred-to case law, that the inquiry involved here is fact-specific and depends on the particular circumstances of the case. The Debtor's ability to move back into the DuPage Property was essentially solely dependent on her ability to attain sufficient income. Given her age and physical condition, that most likely would be achieved by being approved for Social Security Disability benefits. As of the bankruptcy filing date, she had applied for Social Security Disability and had requested a hearing. She was apparently in the process of, or on the verge of, being approved. That indeed

8

came into fruition and the Debtor began attaining income again. The Court notes that, although the Debtor was absent from the DuPage Property for five years, the record sufficiently indicates that throughout that time, she was diligently pursuing Social Security Disability benefits. To some extent, that process may have been hampered by administrative delays or other things outside the Debtor's control. Although the Debtor could not have anticipated the exact time when she would attain Social Security Disability income, which was a condition precedent to her occupying the DuPage Property, the same can also be said about In re DeMasi, 227 B.R. 586, where the condition precedent to that debtor's occupancy was when his aunt, who was in her eighties, would die. The "constructive occupancy" doctrine, being an equitable doctrine that seeks to avoid overly stringent and technical determinations of whether a debtor was using a property as a residence as of the filing date, is applicable here.

The Debtor's situation of being temporarily without income is not materially different than the other referred-to cases, as the circumstances of the Debtor initially losing her income, and then subsequently working to replace that lost income, were largely out of her control.[1] The Debtor's efforts to gain income and to return to the property, both prepetition and postpetition, support her position of desiring to use the DuPage Property as a residence as soon as she was able. The amount of the disability benefits she would likely be receiving (and, in fact, is now receiving) appears to be in a sufficient amount as to enable her to maintain the necessary

---

[1] Constructive occupancy requires that the absence be involuntary or compelled, but it is not dispositive that the Debtor may have contributed to her loss of income because she was discharged from her employment for cause. For example, the Court doubts that the outcome of In re Cameron, 25 B.R. 119 (finding constructive occupancy where home was uninhabitable due to fire damage) would have depend on whether or not those debtors did something to contribute to the fire, for example, by leaving a stove unattended. See In re Brent, 68 B.R. at 894 (debtor was absent from the property in part because he misconstrued a court order that required him to sell the property as also forbidding him from occupying it).

9

expenses on the DuPage Property (and, in fact, appears to be substantially more than she was earning at the time she was employed, perhaps because the benefits might be retroactive).

As noted, an expression of the desire or intent to return to the premises at a later date must be coupled with other circumstances which permit the conclusion that the intent can and could realistically be realized or come to fruition. To reiterate, the Court has concluded that such is the case here based on a combination of the foregoing and the following. The Debtor had lived in the DuPage Property for a long time and had inherited it from her mother. Some, though not all, of the Debtor's furniture remained in the premises during her absence. Having lost her job and apparently having been unable to replace the lost income, she left the DuPage Property because of her inability to pay for taxes, condominium association dues, and other expenses. The Debtor leased the DuPage Property to her Niece on a month-to-month basis, which permitted the Debtor to regain possession more or less at will (notwithstanding the Debtor's apparent leniency in allowing the Niece to remain temporarily beyond the stated March 2014 deadline). The Niece apparently understood and testified that she believed that, at some point, the Debtor might move back into the DuPage Property. The Debtor was living with her sister nearby and not paying rent, which suggests that such arrangement could end relatively easy when the Debtor obtained the income to move back into the DuPage Property.

Considered in sum, the situation here is more than bare allegations of a vague or floating intent to return. Rather, the recited circumstances sufficiently constitute objective and external facts demonstrating a sufficiently realistic possibility that, as of the filing date, the Debtor not only intended to return to occupying the DuPage Property, but the means by which she could

return were in sufficient prospect as of the filing date and not so vague or indeterminate as to preclude the application of the constructive occupancy doctrine to this situation.

## Conclusion

For the foregoing reasons, the Trustee's objection to the Debtor's claim of exemption is denied and the Court is contemporaneously entering an appropriate order.

**Signed on August 12, 2014**

                 /s/ Walter Shapero
              **Walter Shapero**
              **United States Bankruptcy Judge**